R. Conley, C.C.                   S.C. C.S.C. D.A. C.C. S.B. M.D. S.C. C.C. D.A. C.C. M.D. S.C. C.C. E.D. S.A. C.R. Summer of 2015 In its position statement, it states, upon initial review by Becky Rendon, they found errors. And then it said see Exhibit C. It's representing to the EC that Exhibit C is those errors found by Becky Rendon. And that's 22 pages of case notes. Those 22 pages include 15 pages from February of 2012. So it couldn't have been part of what they found in October of 2012. In a summary judgment, then, it again refers to all 22 pages. And then in its brief, it talks in terms of, well, it understands that the district court said those case notes from February of 2012 had no bearing. They still set the stage for what came later. So in its brief, the employer appears to be suggesting the February 2012 case notes may have had a bearing on it, but they weren't necessarily part of it. That's a change. And the employer ought to know why they fire somebody. It starts with the employer. The employee doesn't get a chance to raise her hand and ask what happened, especially in this case, when she's fired, while she's out. But actually, the framework provides that the plaintiff makes that a prime offensive case for discrimination, and then the employee can offer that it wasn't for a discriminatory purpose. Yes, sir. That there was a reason. Yes, sir. Right? Yes, sir. Well, that's the pretext stage where we talk about, does the reason hold up? Does the reason hold water? We submit that it does not hold water. Okay. So at least for purposes of meeting their claim, you have to have identified what you believe to be the reason they contend she was fired. Yes. Right? Absolutely. What have you identified as what you believe they claim is the reason they fired her? We don't doubt that. It was because she was pregnant. It was her expectation that there would be . . . No. Maybe I didn't ask my question clearly. They've identified some reason that they claim they fired her, other than that she was pregnant. Right? What do you believe that . . . What are they claiming that is? You just told me that there's something in February and something in October. Well, it's kind of all over the map. I think a big part of it is allegedly missing a deadline. You know, her job is processing Social Security claims, and you do have a tight deadline. Okay. So they allege she missed a deadline. Yes, sir. And so do you contend she did or did not miss one? We contend she did not, not based on the understanding of missing a deadline in her industry with her employer. The understanding was explained by Becky Rendon, another paralegal, that technically . . . I just want to be clear. So in the first instance, she claims she didn't miss any deadlines. Yes, sir. Correct. So we don't get to any claim that, well, I missed a deadline, but so did others, and they weren't disciplined. We don't need to get to that, because the fact is she didn't miss a deadline. Is that right? She . . . I mean, I think we would get to that when we talk about pretext. I mean, as far as addressing their claim for why she was fired, I think we would talk about whether other people . . . assuming she allegedly was perceived as missing a deadline, I think . . . Well, you just said that they alleged that she missed a deadline. They did. I'm asking you whether or not your contention is she never missed one, or whether or not your contention is she missed one, but so did others, and they weren't disciplined. You're claiming both are one or the other. Exactly. That's a great question, Judge. That's actually . . . I think she's saying both, and it's in the record. She's saying, number one, I personally, I did not miss a deadline, quote, unquote. If you use that phrase, meaning the Social Security might have sent a decision to the client and not sent it to us, and that's not on me. Yeah, technically, the firm missed a deadline, and it was my case, but that's not my fault, technically. But, yes, there were people who did, in her words, miss a deadline, meaning it was their own fault, meaning they got the deadline, they got the decision, but they missed . . . they didn't respond quickly enough to that missed deadline. And just so I understand what was going on in the office, they represented people in trying to get Social Security benefits, and so in the first instance, this is before an administrative law judge. It is. And then the administrative law judge makes a decision which is either favorable or adverse, a denial. Yes, sir. And then you get a denial, and you get a notice of a denial, and then there's a particular period of time within which you can appeal that decision. Yes, sir. And so the allegation about her missing a deadline is a deadline for filing an appeal of an adverse decision of the ALJ. Yes, sir. All right. And, Will, I was going to add, if you missed a deadline, if you have good cause, then you have a deadline to respond and ask for a re-hearing. All right. So the deadlines, though, the notice of a denial and all that, it's a case that's already in the office. Yes, sir. We're not talking about people walking in after they've received an adverse decision, and then they say, I want you to represent me on my appeal. We're talking about cases that were already in the office where there was representation at the lower level, administratively, to try to get the benefits. That's my assumption. That was never an issue. All right. I don't think we have any testimony in the record whether it was their case all along or whether they inherited the case from someone else. All right. All we know is that this decision went out, it went to the client, and the law firm did not get the decision. All right. So I really can't speak to that. I think a key issue is going to be, when was the termination decision made? Her last day was October 5th. That was a Friday. October 8th was the following Monday. She actually gave birth October 12th. So within a week, she had given birth. Tracy Leonard, we did not depose her, but she did two different statements on summary judgment, and they're responding to summary judgment. And her story changes from one affidavit to the other. And one affidavit from December of 23rd, she states that the decision to terminate was made before the delivery date, meaning before October 12th. But the letter notifying her of her termination was dated October 22nd, and it said it's effective October 19th, three days ago. Jamie Shaw, he's the senior partner. He's really the only partner at this point of the firm, my understanding. Again, that wasn't an issue, but that's my understanding. He was very clear that he wanted to fire her, get rid of her right away. This is such a big issue, we've got to fire her right away. He used the word immediately. In his deposition, two or three times he said immediately. And Tracy Leonard said that in her first affidavit, December 14th, that the decision to terminate was made immediately. Once they knew there was a problem, they made it immediately. Well, okay, that suggests the decision was made October 22nd, the date of the letter. But in her other statement, she's saying it was made, no, before October 12th. So her statement isn't consistent. It's another example of how their story does not hold water. And, in fact, even in the contemporary notes, the case, again, we're getting back to those case notes, those 22 pages. There's these two cases. I refer to them by numbers. I mean, the magistrate judge kind of dug out the names, and you can dig out the names, but it's hard. So I'm going to refer to them by numbers, 224-616 and 223-463. Those are the cases. In both of those, there's a record, a contemporary record made at the time that Becky Rendon discussed those cases with George Escobedo, the supervising lawyer, on October 8th. So we know about October 8th. They had to know there was a problem here. So, again, it makes it not logical that they would wait until October 22nd to fire her, assuming that they would have told Jamie Shaw right away. And, again, he says this was a big issue. Everything had to be done immediately. So the story doesn't hold water. Jamie Shaw testified. He went at length about signing good cause letters and not signing good cause letters. It was hard. You'll see in the record, he was not clear on whether a paralegal could sign a good cause letter or not. At one point, he says no. At other points, he backed off of that. But he did say something pretty revealing, I think. He said if a good cause letter goes out, he wants to know why. Because a good cause letter means, as the judge was pointing out, that a deadline has been missed. He would want to know why. Well, he says he wanted to know why, but he didn't ask. No one asked Cynthia Hineson what happened. No one asked why the deadlines were missed. No one made the phone call. And I asked him that question, and he said he didn't need to ask. He needed to fire her. This is a big deal. He had to fire her right away. So his testimony is not consistent. Becky Rendon herself took the phone call in one of those cases, 223463. She took the call. That was on October 7th. Cynthia Hineson was still there. She was working through the 5th, which is a Friday. So Becky Rendon knew that a deadline had been missed, but nothing happened to Ms. Rendon. And no one ever talked about what should have happened. In answer to discovery, the employer said that no paralegal other than Cynthia Hineson suffered discipline for missing a deadline. So that suggests that Becky Rendon suffered no discipline, and apparently she didn't. The other thing I wanted to talk about was – your burden in this case in order to prevail at whatever point it would be, at summary judgment or after trial or whatever, would be to establish that the firing was because of pregnancy, right? Yes. I mean, it could be for some other irrational reason having nothing to do with whether she actually missed deadlines. But as I understand it, that's why I'm asking you so you can tell us, is there anything in the record that indicates any animus based on pregnancy status? Just the comments about – by George Escobedo asking – she would ask George, will I have a job when I come back? And he would make a joke out of it. Is that animus? I don't know. I'm not sure how to interpret that. I think that's something the jury would have to do. But he wasn't clear. He wouldn't say one way or the other you'd have a job or no, you wouldn't. He would make a joke. He would just say, hold your job for you. Chuckle, chuckle. To him, it was funny. And, of course, there's an expectation among employees that if you get pregnant, you'll be in trouble. But, you know, that's – I wouldn't describe that as – that's not evidence from a manager that may or may not be admissible. What was the nondiscriminatory reason given by the employer as distinct from pregnancy? And what did you do to rebut that as false or not correct? Well, of course, the challenge with this case is, you know, I do a fair amount of employment cases. Usually we have a write-up or two to look at. But we don't in this case. We have the case notes. But they're very squishy. And I don't know when they come out. So their story changes. I put a chart in my brief about that. Their story changes slightly from person to person and from pleading to letter to pleading. My understanding – well, I think the big issue allegedly was missing the deadlines, not keeping in touch with the Social Security Administration and the opinion of one. Jamie Shaw said hiding the ball. But, you know, that's something Escobedo said. And, you know, Shaw would only know what Escobedo told him. So I'm not – I have to say I'm not sure what the reason – what the alleged reason was. There were a lot of reasons. As far as – The district court found that there were nondiscriminatory reasons and that you did not rebut them. And I want to know what they are and how you failed to rebut them. My challenge is that – is that, like, the one thing the district court focused on was allegedly missing the deadlines and then hiding it by sending good cause letters, meaning not telling your lawyer you're signing a good cause letter on his behalf. That's asking the plaintiff to prove – they're asking Cynthia Hineson to say affirmatively, I remember 223463 and I remember I got that letter and then I sent it and I asked George on the day – you know, typically paralegals just don't remember that kind of detail two years later about a case. So the judge is asking – putting the burden on us to prove a negative, to prove we didn't do something. Cynthia actually did rebut it. She said, I never missed a deadline, meaning I never personally missed a deadline. I think that is rebutting it. And under Tolan v. Cotton – Is it a question of crediting that testimony? Well, I think it is. I think Tolan v. Cotton suggests that just because she's a plaintiff, she's still a witness, and she ought to have some credibility, at least for purposes of summary judgment. The issue is that the two swears to different points should have been before a jury or a judge rather than accepting who was at Escobedo's testimony and not giving her an opportunity. I believe so, Judge. And so I talk about that. I believe the magistrate is kind of hanging on to that pretext plus. It uses this standard of the plaintiff has to show the reason provided by the employer is false and that discrimination was a real motive. And my concern is that latter half, showing that discrimination was a real motive. I think when you see that in St. Mary's Honor Society v. Hicks, they're talking about the ultimate burden. Yeah, the ultimate burden is always on the plaintiff to prove discrimination was a real motive. But in summary judgment, we can't do that. We can show the pretext has holes in it, and I think we've done that, and then it's up to the jury to conclude discrimination was a real motive. That concludes everything. You can take time for rebuttal. Thank you, Mr. Crane. Yes, sir. Ognieto. May it please the Court. My name is Joshua Ognieto. I'm here on behalf of Karabin and Shaw. I believe that what the appellant offers are insubstantial reasons that she believes established pretext. And with regards to Hicks v. Reeves, the pretext rule versus the pretext plus rule, I don't believe the court ever got there, didn't have to get that far, because they sought the pretext. Karabin and Shaw has articulated consistently legitimate nondiscriminatory reasons for termination, and that is missed deadlines and the covering up of errors. I suggest here the issue of whether Heinsohn— And in that connection, you said missed deadlines and covering up of errors. The covering up would be the unauthorized signing of good cause letters. Yes, Your Honor. And more than that is the not going to the supervising attorney and saying, we have a problem. This is what needs to happen. And I want you to help me if I'm misunderstanding what happens, but the only need for a good cause letter would be to explain a missed deadline. Correct. So you're not suggesting that nobody at the firm ever missed a deadline? No, Your Honor. No, Your Honor. And even Mr. Shaw says the deadlines do happen. The difference on this one is—and you'll see it in his testimony—did she hide the ball? Did she give representations that everything is okay like I promised it would be? I'm going to go on maternity leave. That same day we start finding problems. And that's the rub. I suggest here that whether Heintzen has demonstrated a genuine dispute of material fact on the issue of pretext is what we're here— is what the focus is on. Now, the appellant had an opportunity to prove by preponderance of the evidence that the reason offered by Kerrivin and Shaw are pretexts for discrimination. We had big chains discovered. We had depositions as many as he wanted. And that's where I believe that the appellant falls short. There has been no introduction of documentation to establish pretexts. Plaintiffs' affidavits alone generally are not sufficient enough. It just becomes that swearing match. There is no offered evidence that others were treated less harshly doing the exact same thing, not dismissing the deadline, hiding the ball, making false representations. Heintzen has not created a fact issue as to pretext. And as this court has found in other cases, management doesn't have to make proper decisions on non-discriminatory ones. And I'm citing Bryant v. Compass Group, USA. This court has also held that a fired employee's actual innocence of her employer's proffered accusation is irrelevant as long as the employer reasonably believed those reasons and acted upon them in good faith. There's no evidence that that didn't happen either. Now, who was the decision-maker? Well, they don't even have to reasonably believe the reasons as long as the action wasn't taken for some prohibited purpose.  Pregnancy, race, sex, age. I agree. The decision-maker here was Mr. Shaw. He was the one. He's the CFO. He's the one that gets to hire and fire. And what happened on this one is that his decision to terminate was after reviewing the documents. When he was told that there were some missed deadlines, that there was a failure to inform the supervising attorney, and that there was a cover-up with those letters, that he starts thinking, you know, am I harming my clients? Do I put my carrier on notice? Those are big, important things. And I refer to the record 295 and 299. There is no evidence Heinsohn's pregnancy was a factor in Shaw's decision. Appellant hasn't proven by preponderance of the evidence that the legitimate reasons offered by Karabin and Shaw were not the true reasons, were not true reasons, and instead were a pretext for discrimination. Stated another way, there's nothing that I have seen in the record that goes as to the unworthiness of credence, as cited in other cases of what we're saying happened. Again, I suggest the main question here is whether the appellant has raised a genuine issue of fact regarding pretext. Now, neither the U.S. magistrate nor the district court found any. The pretext rule, as clarified by Reeves, has not been met, had not been met. Appellant lacks sufficient evidence for a reasonable fact finder to reject Mr. Shaw's nondiscriminatory explanation for his decision. Now, if the court gives weight, if it disagrees and gives weight to the appellant's offered evidence, the Reeves case also notes that evidence of pretext will not always be sufficient to survive summary judgment. Examples the court in Reeves gave, if the record conclusively reveals some of the nondiscriminatory reasons for the employer's decision, I think we have that here. Hiding the ball, making false representations. Or if the plaintiff only creates weak issues of fact, I think we have that here, as to whether the employer's reasons were untrue and are there abundant, uncontroverted, independent evidence that no discrimination occurred. And so everybody's saying the same thing when you start looking at the deposition testimony. Now, what has Kerabin and Shaw shown? And just very briefly, she lets us know that she's pregnant. She's going on maternity leave. And she is instructed by her supervising attorney, make sure all your cases are caught up. They're updated. If you have any deadlines, let's get them met. I'm citing the record at 247 and 586. She promised her attorney that she had done so, page 586 of the record. The cases the plaintiff was responsible for were going to be handled by the other paralegal assistant, Ms. Rendon. She was going to double her caseload in an attempt to save that position for Ms. Hindson. That was the plan the whole way, as she says in her deposition. Almost immediately, Rendon found missing deadline, 175 days. Subsequently later, she found more. Rendon reviewed the other files, found other missing deadlines, notified her attorney, supervising attorney, Mr. Escobedo, who notified the comptroller, Ms. Leonard. They got the lead paralegal involved, Ms. Carvajal, and they all started looking. And what they found was presented then to Mr. Shaw. And Mr. Shaw, I'm citing the record of 397, also pages 283 and 284. The records, and Mr. Shaw made the decision. The records contain consistent evidence that the decision was made based on missed deadlines and covering up of errors. Plaintiff has failed to create a genuine issue of fact as to the falsity of Karen and Shaw's reasons for discharge. On the ultimate issue of pregnancy discrimination, plaintiff has established no genuine issue of material fact regarding discriminatory intent. What the appellate has presented is weak compared to the evidence contained in the record that no discrimination occurred. A summary judgment is appropriate. If there are no further questions, my father taught me the value of brevity, and I will rest. As did my father, but I'll ask you this. I guess I'm a little bit concerned. And you may contend that these conversations didn't occur, but there seem to be some conversations or discussions about, will my job be waiting on me when I come back? Are you going to hold my spot for me? Conversations like that seem to suggest that a person would have reason to be concerned that my going out on maternity leave could result in me losing my job. Did those conversations happen? They did, and in the record there are e-mails in which Karen and Shaw says, according to his policy procedures, that her job was not guaranteed for her. It wasn't a guaranteed thing. And there's also testimony by Mr. Escobedo that he was going to try to keep that job, and that's why Ms. Rendon was going to double up on the work. And they weren't going to replace her right away. So that is true. Karen and Shaw was treating her like they treated everyone else, though. And it was not guaranteed. Ms. Rendon, subsequently, it's in her deposition. She had a child. She was out for two weeks, two, three weeks. Her job was not guaranteed either. When you say not guaranteed, are you saying that their policy was if you get pregnant, you could be out of here? My understanding is that that was their policy, and I'd have to go back and look at that record, is that it was not held unless they were there for two years or more. I think that's where it might be more confused. All right. Is that all? Thank you, Mr. Nieto. Thank you. Mr. Crane, you saved time for another. Just one point to follow up on the judge's last question. The letter was dated October 22nd. You're fired. No reason given. As late as October 19th, Mickey Rendon and Cynthia Hines were texting each other. They were still good friends at that point. And one of the questions they came up with, no one had said anything in regard to whether you still have a job or not. That was clearly an issue on Ms. Hines' list. That was top on her list at the time, enough that she was asking Mickey Rendon about it, and Mickey had texted back saying no one has made a decision yet. And that's at record 835. I have nothing else. I thank you for your time. All right. Thank you, Mr. Crane. Your case and all of today's cases are under submission.